## WAYNE v. BURKE.

### No. 711.

Municipal Court of Appeals for the District of Columbia.

Jan. 14, 1949.

See also 61 A.2d 714.

Philip W. Austin, of Washington, D. C., for petitioner.

Frederick G. Umhau, of Washington, D. C. (Leon Tobriner and Walter N. Tobriner, both of Washington, D. C., on the brief), for respondent.

Ernest F. Williams, of Washington, D. C. (Ruffin A. Brantley, of Washington, D. C., on the brief), for Administrator of Rent Control.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

Petitioner, Earl Wayne, was on January 1, 1941, and for several years before that time the tenant of respondent Julia Kennedy Burke in a dwelling house at 805½ 10th Street, Northwest. The house is a three-story and basement building containing nine rooms and one bath, which tenant rented in its entirety. In the basement, in front of the heating plant, tenant has throughout his tenancy operated a small one-man printing shop. With his wife he has occupied the second floor; and he has rented the remaining rooms to others. The rent on January 1, 1941, was $65 per month. In October 1947 landlord petitioned the Administrator for an adjustment of rent and asked for "a separation and partition of the accommodations so as to create a business unit and housing quarters, the rent for each to be separately determined and fixed as hereinafter set forth." She asked for an increase to $235 per month for the entire building. After hearing by an examiner and full consideration by himself the Administrator filed a carefully prepared memorandum in which he ordered that the basement portion of the building "shall be treated as commercial property and severed from the housing accommodations contained in said building." He fixed the rental ceiling for the housing accommodations at $60 per month. Tenant has brought the case here for review.

This question has not previously been before us. In Carow v. Bishop, D.C.Mun. App., 50 A.2d 598, we held it was not a violation of a lease for the tenant to use her premises for a dwelling and millinery business, where she had so used them for a number of years with landlord's acquiescence. Later, in Ridolfi v. Benton, D.C. Mun.App., 58 A.2d 723, we had before us a situation where an apartment in the rear of the first floor could not be rented or used conveniently except in connection with the use of a front room occupied by a barber shop. We held that because of the indivisible connection of that room with the

barber shop it was to be treated as commercial property. But we ruled differently regarding a second floor apartment with a separate entrance, which had been continuously used for dwelling purposes and the use of which apartment was not essential to the use of the rest of the premises. We held that such apartment was to be regarded as housing accommodations subject to the Rent Act, D.C.Code 1940, § 45—1601 et seq. We also held that the parties were not precluded from executing separate leases for the first floor and for the upstairs apartment. The case before us differs sharply from the Ridolfi case. There the parties themselves had always treated the commercial and the dwelling portions of the leased premises as separate and distinct, whereas in this case the entire premises were throughout the ten years of the tenancy rented and treated as a unit.

The test as we see it is whether there is a real basis of severance or divisibility under the Rent Act. This is not a case where a landlord has taken vacant property and (as would have been her right) remodeled it for all or part commercial occupancy. Nor is it a case where the landlord seeks to oust the tenant for the purpose of substantially altering or remodeling the premises.[1] If she had done either of these things she could then, of course, have petitioned the Administrator to fix ceilings on the non-commercial or dwelling portions of the building. It seems to us that she has attempted a similar objective by asking the Administrator to subdivide the premises into commercial and non-commercial portions, to fix a 'new ceiling on the dwelling portions and to order the commercial portions decontrolled.

The objection to this procedure is that it runs athwart the rights of a tenant in possession, rights vested in him by the Rent Act which was framed and enacted to prevent tampering with existing tenancies. Despite the fact that a portion of the basement has been used as a print shop the valid user of a major portion of the house as housing accommodations brings the tenant within the protection of the Rent Act.[2]

Here there was a single tenancy with nothing in the record to indicate that either of the parties ever regarded it·as divisible. There are no separate toilet facilities for the housing parts of the building and the so-called commercial part. The entire house is heated by one heating plant and served by one gas meter, one electric meter and one water meter. These facts lend support to tenant's claim that his tenancy was in a non-severable unit. If it were otherwise landlord could sue him at any time for possession of that part of the basement where his printing equipment is located. Or the landlord, having accomplished the decontrol of that part of the premises, could demand for it any rent she wished. This would plainly defeat one of the major purposes of the Rent Act.

It may be, as landlord argues, that tenant has by subletting rooms been getting his own rent very cheap. But there is no charge that he did so without right. We note also that the Administrator says that property in this neighborhood is in great demand because the neighborhood is now almost entirely commercial and that there are "peculiar circumstances" in relation to the rental of the building which were not foreseen at the time the Rent Act was passed. These considerations are of course entitled to weight in deciding what increase in rent the landlord should have. But they do not justify an order making a severance or artificial subdivision of the house into dwelling and non-dwelling portions, in disregard of the rights of a tenant in possession.

There are cases in other jurisdictions which though not directly in point lend general support to our ruling. Lovett v. Bell, 30 Cal.2d 8, 180 P.2d 335; Durfey v. Kukresh, —— Misc. ——, 80 N.Y.S.2d 246; Syracuse Savings Bank v. D'Elia, 185 Misc. 928, 56 N.Y.S.2d 800; Joandor Realty Corporation v. Zion, 184 Misc. 595, 54 N.Y.S.2d 745; Farrow v. Martin, Mun.Ct., 195 N.Y.S. 244; Bracken v. Hahn, Sup., 194 N.Y.S. 82. But see Morgenroth v. Emert, 118 Misc. 260, 193 N.Y.S. 305; Bavendam v. Levinson, 116 Misc. 135, 189 N.Y.S. 687.

Reversed for further proceedings in accordance with this opinion.

---

[1] Code 1940, Supp. VI, 45—1605(b) (4).

[2] Heindrich v. Dimas-Aruti, D.C.Mun. App., 42 A.2d 138.